IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMOTHY BARRY, et al.

     v.                :   Civil Action No. DKC 10-3120

EMC MORTGAGE, et al.

**MEMORANDUM OPINION**

Presently pending and ready for review is the motion for a more definite statement of claim and to dismiss filed by Defendant EMC Mortgage Corp. (ECF No. 6) and the motion to dismiss filed by Defendant First Ohio Banc and Lending (ECF No. 9). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant EMC Mortgage Corp.'s motion for a more definite statement will be denied, Defendant EMC Mortgage Corp.'s motion to dismiss will be granted in part and denied in part, and Defendant First Ohio Banc and Lending's motion to dismiss will be granted.

**I.    Background**

    **A.    Factual Background[1]**

This case arises from the efforts of Plaintiffs Timothy and Susan Barry to refinance the mortgage on their Maryland home.

_____

[1] These facts are alleged in Plaintiffs' complaint.

Defendant First Ohio Banc and Lending ("First Ohio") is an Ohio corporation with its principal place of business in Ohio and the original lender for Plaintiffs' mortgage refinance. (ECF No. 1 ¶ 2). Defendant EMC Mortgage Corp. ("EMC") is a Delaware corporation with its principal place of business in Texas and the subsequent assignee of Plaintiffs' mortgage loan. (*Id.* ¶ 3).

In 2005, Plaintiffs contacted several potential lenders to discuss the possibility of refinancing their home mortgage to pay for home improvements. (*Id.* ¶¶ 5, 7). Several lenders declined to assist Plaintiffs because of their lack of home equity, lack of credit, and imbalanced debt to income ratio. (*Id.* ¶ 9). First Ohio was not deterred and agreed to assist Plaintiffs. After an initial screening interview, a First Ohio representative told Plaintiffs they could obtain $75,000 in equity from their refinance. (*Id.* ¶¶ 13-14). The representative did not verify Plaintiffs' ability to repay their mortgage loan at its original rate or at the rate that would take effect upon refinancing. (*Id.* ¶¶ 16-17).

Plaintiffs submitted their loan application packet, received loan approval, and were contacted by a title company to schedule a settlement date. (*Id.* ¶¶ 18-20). On the date of settlement, Plaintiffs "were unnerved by the settlement

officer's lack of knowledge about the transaction." (*Id.* ¶ 21).
In addition, "material details in the loan they received were
drastically different from those to be a part of the loan they
believed they had applied for" (*id.* ¶ 22), the total amount of
the refinance was lower than originally quoted, and the equity
cash out was only $60,000. (*Id.* ¶ 23-24). Nevertheless,
Plaintiffs proceeded with the refinance despite the
discrepancies because they had already made home improvement
project commitments. (*Id.* ¶ 25). Plaintiffs also allege that
important disclosures were missing from the settlement package
and they believe the disclosures were withheld "as a part of an
effort to induce the Barrys into agreeing to a loan different
than the one for which they had originally applied." (*Id.*
¶¶ 27-28). Over time Plaintiffs realized that they were making
interest only payments on a negatively amortizing loan and the
principal on their mortgage was not decreasing. (*Id.* ¶¶ 29-30).

At some point First Ohio sold Plaintiffs' loan to EMC, and,
in October or November of 2009, Mr. Barry contacted EMC via
telephone to discuss his concerns about his interest-only
negatively amortizing loan. The EMC representative then
suggested a new agreement to restructure the payment terms such
that Plaintiffs' adjustable rate loan would convert to a fixed
interest rate of 5.5% for five years in connection with higher

monthly payments. (*Id.* ¶¶ 33-35). An agreement reflecting these changes was signed by Plaintiffs, increasing their monthly payments from $2400.00 to $2850.00. (*Id.* ¶ 37). Despite the higher payment, the loan principal continued to increase, and after five months Plaintiffs were struggling to make the monthly payments. (*Id.* ¶¶ 38-39). Plaintiffs again contacted EMC and requested a reduction in their payments. EMC agreed to enter into a new agreement with Plaintiffs whereby their monthly payments would decrease to $2400 for six months under a "loan modification trial period." (*Id.* ¶ 40). EMC told Plaintiffs that if they made six payments, on time and in full, the modification would become permanent. (*Id.* ¶ 41). After six months of making their payments at the reduced amount, however, Plaintiffs received a bill from EMC demanding a much larger sum. Plaintiffs state that it is unclear how the larger calculation was made but it appeared to be the sum of their old monthly payment of $2850, plus the difference between that amount and the reduced amount that Plaintiffs had been making for the prior six months. (*Id.* ¶¶ 43-44). Plaintiffs were unable to pay the lump sum and went into loan default. (*Id.* ¶ 45).

**B. Procedural Background**

On November 3, 2010, Plaintiffs filed a thirty count complaint in federal court. Count I alleges that EMC breached

the loan modification agreement. Count II alleges that both EMC and First Ohio are liable for gross negligence. Count III alleges that both Defendants are liable for an "intentional violation of the duty of good faith." Counts IV, V, VI, and VII allege that First Ohio is liable for "fraud, fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation." Count VIII alleges that EMC is liable for violations of the Maryland Consumer Protection Act. Counts IX through XXIX allege that EMC is liable for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), and corresponding regulations. Counts XVI, XXV, XXVII, and XXVIII also implicate Defendant First Ohio. Finally, count XXX seeks injunctive relief to prohibit EMC from foreclosing on the property, submitting negative credit reporting, or engaging in any other complained of activity.

On Defendant 10, 2010, EMC filed a motion seeking a more definite statement as to counts I and VIII and to dismiss counts II, III, and IX through XXX. (ECF No. 6). On December 21, 2010, First Ohio filed a motion to dismiss all counts alleged against it. (ECF No. 9). Plaintiffs oppose all the motions.

**II. Motion for a More Definite Statement**

Under Fed.R.Civ.P. 8(a), a complaint must contain a short and plain statement of the grounds for relief. Rule 8(e) directs that each averment is to be simple, concise, and direct. Fed.R.Civ.P. 12(e), in turn, provides:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

As stated in Wright & Miller:

> The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small. As the cases make clear, the pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss.

5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1376. The decision of whether to grant a motion for more definite statement is committed to the discretion of the district court. *Id.* at § 1377; *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998).

Defendant EMC moves for a more definite statement of counts I and VIII of Plaintiffs' complaint. EMC argues that the breach

of contract claim in count I is vague and ambiguous because it fails "to state what the agreement was, whether the agreement was oral or in writing, the terms of the agreement, the parties to the agreement, the substantive provisions of the agreement that were allegedly breached, or the who, how or when of whatever breached is alleged to have occurred." (ECF No. 6, at 2). EMC further notes that because the complaint does not contain the full names of the plaintiffs or provide the address of the property that secures the loan, or even the county where the property is located, it has been unable to identify the property and loan transactions at issue from its business records or land records. (ECF No. 15, at 1-2).

Plaintiffs dispute EMC's characterization of the complaint and argue that the complaint identifies the agreement at issue, its relevant terms, and the ways in which EMC breached that agreement. (ECF No. 11, at 2-3). For example, Plaintiffs point out that the complaint states explicitly "Defendant EMC Mortgage created a binding agreement with the loan modification trial period." (*Id.* at 3) (citing ECF No. 1 ¶ 48). Plaintiffs maintain that they are not obligated to provide the complete terms of the agreement in their complaint. (*Id.*).

While motions for a more definite statement are disfavored, EMC had made a strong case for requiring Plaintiffs to provide

certain additional details that are necessary to enable EMC to respond to the complaint allegations. *See Frederick v. Koziol*, 727 F.Supp. 1019, 1020-21 (E.D.Va. 1990) ("The motion for more definite statement is 'designed to strike at unintelligibility rather than simple want of detail,' and the motion will be granted only when the complaint is so vague and ambiguous that the defendant cannot frame a responsive pleading.") (quoting *Scarbrough v. R-Way Furniture Co.*, 105 F.R.D. 90, 91 (E.D.Wis. 1985)). EMC undercut its own argument, however, in its attempt to bolster its simultaneous motion for dismissal. In support of dismissal of other claims, EMC attached copies of a deed of trust and other documentation pertinent to the refinancing of a property owned by the Barrys and located at 7318 Musical Way, Severn, Maryland, in 2006. (ECF No. 17-1). EMC also attached a copy of a loan modification agreement regarding this property and signed by Plaintiffs and EMC in 2009. (ECF No. 17-2). In response to a court order, Plaintiffs filed a surreply admitting that the modification agreement is the written document referenced in paragraph 37 of the their complaint, although they maintain that it does not state the "full scope of terms of the 2009 Loan Restructuring." (ECF No. 21, at 1). By confirming that this written document is an accurate copy, Plaintiffs have provided EMC with the address of the property at issue and the

full names of the parties and EMC can now search its own records and public land records for any additional information it needs to formulate its answer. The motion for a more definite statement will be denied.

## III. Motions to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## B. Claims Against First Ohio

As an overarching basis for dismissal, Defendant First Ohio argues that all of the counts against it are barred by the statute of limitations.[2] (ECF No. 9, at 3). First Ohio contends that the statutes of limitations for Plaintiffs' claims are a maximum of three years and all the claims against them accrued more than three years before Plaintiffs filed their complaint. (*Id.*). Plaintiffs argue in response that the claims did not accrue when the loan transaction was completed in 2005 because First Ohio's failure to provide important disclosures prevented Plaintiffs from learning the facts giving rise to their claims until much later. (ECF No. 14, at 6-7).

The statute of limitations for Plaintiffs' Maryland state law claims is three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("a civil action shall be filed within three years from the date it accrues unless another provision of the Code

_____

[2] The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the plaintiff's claims are time barred. *Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *see also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 352 (1990) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate).

provides a different period of time within which an action shall be commenced"). Under Maryland law, a cause of action accrues at the time the plaintiff had actual knowledge or implied knowledge of the existence of the cause of action. *Wagner v. Allied Chemical Corp.*, 623 F.Supp. 1407 (D.Md. 1985) (citing *Poffenberger v. Risser*, 290 Md. 631 (1981)). Implied knowledge springs from "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [such that plaintiff is charged] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." *Poffenberger*, 290 Md. at 637.

The statute of limitations for Plaintiffs' claims alleging disclosure violations under TILA and RESPA is one year from the date of the occurrence of the violation. *See* 15 U.S.C. § 1640(e); 12 U.S.C. § 2614.[3] The date of the occurrence of the violation is the date on which the borrower accepts the creditor's extension of credit. *See, e.g., Davis v. Wilmington Finance, Inc.*, No. PJM-09-1505, 2010 WL 1375363 at *5 (D.Md. Mar. 26, 2010) (slip copy).

_____

[3] TILA provides that borrowers have up to three years to raise a right of rescission. 15 U.S.C. § 1635(f). Plaintiffs have not named First Ohio in any claims seeking rescission.

12

Plaintiffs allege that they refinanced their mortgage with First Ohio in 2005.  Because more than three years passed before Plaintiffs filed their complaint asserting claims against First Ohio, Plaintiffs' claims against First Ohio are time-barred.  Plaintiffs contend, however, that equitable tolling applies, at least for the state law tort claims.  They rely on Md. Code Ann., Cts. & Jud. Proc. § 5-203 which states:

> If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.

Plaintiffs contend that First Ohio's failure to provide the requisite disclosures and the fact that the settlement officer sent by First Ohio was not knowledgeable about the details of their loan are examples of fraud that precluded them from discovering the true nature of their loan within the statutory period.

To invoke equitable tolling, plaintiffs must demonstrate that they were not aware of facts that should have provoked inquiry.  *Minter v. Wells Fargo Bank, N.A.*, 675 F.Supp.2d 591, 596 (D.Md. 2009).  Plaintiffs' reliance on the equitable tolling doctrine here is misplaced because they have alleged that they were troubled with the terms of the loan documents they signed at settlement, (ECF No. 1 ¶¶ 21-24), and that within

approximately fourteen months from the date of the settlement they realized their loan balance was not decreasing. (*Id.* ¶ 28). Because they were aware of these facts, Plaintiffs should have made further inquiry at that time and they have not alleged facts to justify waiting four or five years to raise their claims. As a result of their delay, the claims against First Ohio are now time-barred and will be dismissed.

### C. Claims Against EMC

#### 1. Count II - Gross Negligence

Defendant EMC contends that Plaintiffs' gross negligence claim must be dismissed because any duties that EMC owed to Plaintiffs arose from their contractual relationship and cannot give rise to a negligence claim. (ECF No. 6 ¶ 11). Plaintiffs argue that EMC's contention "presupposes the existence of a valid contract" and that the gross negligence count was pleaded in the alternative so that Plaintiffs could still recover in the event the contracts are deemed invalid. (ECF No. 12, at 3-4).

Plaintiffs are correct that pleading in the alternative is permitted under the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 8(d)(2)-(3). Plaintiffs' gross negligence claim still fails, though, because Plaintiffs have not alleged that EMC has any legal duties or obligations outside the scope of its contractual relationship with Plaintiffs. One seeking relief on

14

a negligence theory must identify a duty for which there has been an alleged breach. *See, e.g., Pendleton v. State*, 398 Md. 447, 460 (2007) ("a valid negligence action . . . must allege: (1) that the defendant had a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the defendant's breach of duty proximately caused the loss or injury"). "Whether a legal duty exists is a question of law, to be decided by the court." *Id.* at 461; *see also Bobo v. State*, 346 Md. 706, 716 (1997) ("The existence of a duty is a matter of law to be determined by the court and, therefore, is an appropriate issue to be disposed of on motion for dismissal."). "The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort" *Heckrotte v. Riddle*, 224 Md. 591, 595-596 (1961).

In ordinary loan transactions, the relationship between a debtor and a creditor is a contractual one, and is not fiduciary in nature. *Pease v. Wachovia SBA Lending, Inc.*, 416 Md. 211, 247 (2010) (citing *Parker v. Columbia Bank*, 91 Md.App. 346, 368, (1992)); *see also Riggs Nat'l Bank of Washington, D.C. v. Wines*, 59 Md.App. 219, 226 ("A deed of trust, among other things, is a contract, and its language is to be construed in accordance with

the law of contracts."), *cert. denied*, 301 Md. 43 (1984).

Plaintiffs' complaint does not identify any additional source

for the duties it references, accordingly Plaintiffs have failed

to plead facts to establish the first element of a claim of

negligence and this claim will be dismissed.[4]

### D.   Count III - Breach of Duty of Good Faith and Fair Dealing

EMC argues that count III should be dismissed because

Maryland does not recognize an independent tort for breach of

the duty of good faith and fair dealing.  (ECF No. 6, at 5).

Plaintiffs do not directly address this argument, but instead

construe EMC's position to be that count III is duplicative of

count I and therefore invalid.  In response to this constructed

argument, Plaintiffs contend that count III refers to EMC's

breach of its duties under the Deed of Trust, while count I

refers to EMC's breach of the loan modification agreement.

(ECF No. 12, at 5).

---

[4] Although not apparent from the face of Plaintiffs'
complaint, they may have intended to allege that Defendants
violated statutory duties imposed by TILA or RESPA.  If they had
made such allegations, the claim would likely have been
preempted by TILA or RESPA.  *See, e.g., Reyes v. Premier Home
Funding, Inc.*, 640 F.Supp.2d 1147, 1156 (N.D.Cal. 2009) ("to the
extent Plaintiffs' negligence claim seeks to impose the
requirements of TILA or other disclosure laws on Wachovia, his
claim is preempted.")

As pleaded, count III purports to state a claim for "intentional violation of the duty of good faith." Maryland does not recognize this cause of action. *See Baker v. Sun Co.*, 985 F.Supp. 609, 610 (D.Md. 1997) ("Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing."); *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 794 (D.Md. 2002) (finding that the duty of good faith and fair dealing "is merely part of an action for breach of contract"); *Mount Vernon Props. v. Branch Banking*, 170 Md.App. 457, 472 (2006), *cert. denied*, 397 Md. 397 (2007). To the extent Plaintiffs intended for count III to state a claim for breach of the Deed of Trust agreement, they have not expressed that intent effectively. To plead a breach of contract, a complaint must plead the existence of a contractual obligation owed by the defendant to the plaintiff and a material breach of that obligation. *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010). Count III does not identify EMC's obligations under the Deed of Trust or state when or how these obligations were breached. The vague assertion that EMC's conduct "was in bad faith" is not sufficient. As written, Plaintiffs have failed to state a claim in count III, and it will be dismissed.

**E.    Truth in Lending Act Violations**

Defendant EMC argues that the TILA violations pleaded in counts IX through XXIX should be dismissed because the 2009 loan modification did not give rise to any disclosure requirements under TILA.  (ECF No. 6, at 5).  Plaintiffs argue in response that the 2009 transaction was a refinancing and did trigger TILA disclosure obligations.  (ECF No. 12, at 6-7).

12 C.F.R. § 226.20 discusses subsequent disclosure requirements pursuant to TILA.  Subpart a covers refinancings and states:

> A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation.

Thus, a typical refinancing does trigger disclosure requirements.  But the regulation further states:

> The following shall not be treated as a refinancing:
>
> (1) A renewal of a single payment obligation with no change in the original terms.
>
> (2) A reduction in the annual percentage rate with a corresponding change in the payment schedule.
>
> (3) An agreement involving a court proceeding.

18

(4) A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance of the types described in § 226.4(d).

(5) The renewal of optional insurance purchased by the consumer and added to an existing transaction, if disclosures relating to the initial purchase were provided as required by this subpart.

12 C.F.R. 226.20(a); *see also Citizens State Bank of Marshfield, Mo. v. Fed. Deposit Ins. Corp.*, 751 F.2d 209, 215 (8th Cir. 1994) ("'refinancing,' such that new disclosures are required, occurs only when the old obligation is actually extinguished and a new one substituted and not when credit terms are merely altered."); *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 715-16 (E.D.Va.) ("restructuring/modification agreements are exempt from TILA's disclosure requirements, otherwise applicable to refinancing agreements, because those agreements resulted only in a change in payment schedule as a result of the [plaintiff's] default or delinquency."), *aff'd by, in part*, 67 F.App'x. 238 (2003).

EMC argues that the loan modification in 2009 was simply a "change in the payment schedule" or "change in the collateral requirements" that should not be treated as a refinancing and

19

that did not trigger any disclosure requirements. (ECF No. 6, at 6). In response Plaintiffs argue that they have not alleged that the 2009 refinance was a loan modification and that the facts they have alleged show that it was a refinance under TILA because it resulted in an increase in monthly payments, it converted the Plaintiffs' interest rate from an adjustable rate to a fixed rate of 5.5% followed by an increase after five years, and because under the agreement the total amount of the loan continued to increase. (ECF No. 12, at 6-7). In reply, EMC submitted a copy of the agreement between the parties labeled "Loan Modification Agreement." (ECF No. 17-2). Paragraph 7 of this modification agreement states:

> Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Agreement. Except as expressly provided in this Modification, the Loan Agreement will remain unchanged and Borrower and Lender will be bound by, and comply with, all of the terms and provisions of the Loan Agreement, as amended by this Modification.

Plaintiffs have admitted that the written agreement provided by EMC is an accurate copy of the written document described in paragraph 37 of their complaint, but they maintain that this written agreement does not cover the full scope of the parties' agreement.

Although the court must accept a plaintiff's factual allegations as true when evaluating a motion to dismiss, it need not assume the accuracy of legal conclusions. As a loan refinancing is a defined term under TILA, the court does not have to assume the truth of Plaintiffs' allegation that the 2009 agreement between EMC and Plaintiffs constituted a refinancing. Instead the court must determine whether the alleged facts support that legal conclusion.[5]

The complaint alleges that per the terms of the 2009 restructure, "the Barry's adjustable rate loan would convert to a fixed interest rate of 5.5% for 5 years" and their new monthly payments would be $450.00 more each month. (ECF No. 1 ¶¶ 34-35). In their opposition, Plaintiffs contend that these changes constituted a refinancing because the interest rate increased, the payment schedule was altered, and the total amount of the loan increased.

First, a change from an adjustable to a fixed rate, as alleged in the complaint, does not necessarily equate to a rate increase. Plaintiffs' complaint did not provide the applicable

---

[5] It merits noting that while Plaintiffs label the agreement a refinancing in their opposition to EMC's motion to dismiss, the complaint itself refers to the 2009 transaction only as a "restructure" or a "modification." (*See* ECF No. 1 ¶¶ 33, 36, 37, 38, 39, 40, 41) (referring to the "2009 Restructuring" and "loan modification trial period").

interest before the 2009 restructure took place, but public land records, which may be considered when reviewing a motion to dismiss, provide that the adjustable interest rate in effect before the 2009 restructure was 8.25%. (*See* ECF No. 17-1, at 1, Deed of Trust, Grantor Timothy Barry, 25 October 2006 (filed 13 November 2006), Anne Arundel County, Maryland, Book 18472, at 16). In fact, the conversion to a fixed rate resulted in a rate decrease of 3.25%. And while the modification agreement provided that the rate would convert back to an adjustable rate in 2013, even this cannot be considered a rate increase because the terms of Plaintiffs' loan before the modification specified that it would become an adjustable interest rate tied to LIBOR starting on November 1, 2011. (*Id.* at 2, Book 18472, at 17).

Plaintiffs' argument that the "new amount financed exceeded the unpaid balance because the total loan amount continued to increase despite Plaintiffs making higher payments" is also to no avail. The amount financed was the unpaid balance at the time of the modification. (*See* ECF No. 17-2, 2009 Loan Modification Agreement). Plaintiffs cannot avoid this fact by arguing that at a future time the balance due from Plaintiffs could increase through negative amortization. Moreover, Plaintiffs had a negatively amortizing loan before the restructure. (*See* ECF No. 17-1, at 1, Book 18472, at 16). The

fact that the loan principal continued to increase after the 2009 modification represented a continuation of circumstances that predated the restructure and does not mean that it was a refinancing.

Because Plaintiffs have not pleaded adequate facts to establish that TILA's disclosure requirements applied to EMC in 2009, Plaintiffs' claims pursuant to TILA will be dismissed.

### F.    Real Estate Settlement Procedures Act Claims

Although neither EMC nor Plaintiffs mentions it, in addition to asserting claims under TILA, Plaintiffs' complaint also alleges violations of the disclosure requirements imposed by the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 and 2610 ("RESPA") in counts XVI, XX, XXI, XXII, XXV, and XXVI against EMC.  Count XVI alleges that Defendants failed to provide a good faith estimate as required by 12 U.S.C. § 2601 and 12 C.F.R. § 226.18(c).[6]  Although less clearly labeled, counts XXV and XXVI also allege violations of RESPA's good faith estimate requirement.  Count XXV alleges that Defendants' initial estimates were inaccurate because the loan Plaintiffs obtained had an interest rate higher than the rate reflected in

_____

[6] Although Plaintiffs cite 12 U.S.C. § 2601 as the source of the obligation to provide a good faith estimate, the obligation is actually imposed by a subsequent portion of RESPA codified at 12 U.S.C. § 2604.

the preliminary disclosures, and count XXVI alleges that EMC failed to disclose to Plaintiffs that their loan required loan origination fees. In effect, both claims are allegations that EMC failed to provide a complete and accurate good faith estimate pursuant to 12 U.S.C. § 2604 and 12 C.F.R. §§ 3500.5, 3500 App. C. So construed, Plaintiffs' allegations in counts XVI, XXV, and XXVI must be dismissed because there is no private right of action under RESPA to enforce or seek damages for failure to provide a good faith estimate. *See, e.g., Collins v. FMHA-USDA*, 105 F.3d 1366, 1367-68 (11th Cir. 1997); *Urbina v. Homeview Lending Inc.*, 681 F.Supp.2d 1254, 1259 (D.Nev. 2009); *Louisiana v. Litton Mortg. Co.*, 50 F.3d 1298, 1301-02 (5th Cir. 1995); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1089-91 (7th Cir. 1982); *Sarsfield v. Citimortgage, Inc.*, 667 F.Supp.2d 461, 467 (M.D.Pa. 2009).

Counts XX, XXI, XXII allege violations of 12 U.S.C. § 2610. This section of RESPA prohibits lenders or servicers from charging fees for the preparation or submission of disclosures required by TILA or RESPA. Yet, in these counts Plaintiffs do not allege that EMC charged unauthorized fees for the preparation of disclosures. Instead Plaintiffs allege that EMC failed to disclose, itemize, or identify certain finance charges (count XX), inflated acceleration fees, "amount[ing] to usurious

interest" (count XXI), and failed to disclose the date by which a portion of a new loan balance had to be paid to avoid additional finance charges (count XXII). These factual allegations do not state claims for violations of 12 U.S.C. § 2610. To the extent these counts could be read to allege violations of unidentified TILA disclosure requirements, the 2009 restructure did not trigger any new disclosure obligations, as discussed above. For all these reasons, the RESPA counts will be dismissed.

### G. Injunctive Relief

Finally EMC moves to dismiss count XXX seeking injunctive relief and relating to an alleged foreclosure and negative credit reporting. (ECF No. 6, at 6). The crux of EMC's argument is that this count should be dismissed as moot because the complaint does not allege that any negative credit reports were made and there is no record of any foreclosures docketed against the Plaintiffs' property in the State of Maryland. (*Id.*). Plaintiffs did not address count XXX in their opposition to the motion to dismiss.

Count XXX states "Plaintiffs have been and will continue to be seriously injured unless Defendant EMC Mortgage's foreclosure, negative credit reporting, and other activities complained of are preliminarily and permanently enjoined."

25

(ECF No. 1 ¶ 168). Plaintiffs do not mention foreclosure or negative credit reporting anywhere else in the complaint. Plaintiffs do allege that EMC has taken certain other actions, such as assessing fees, charges, or penalties, in violation of the parties' agreement. (*See* ECF No. 1 ¶ 50). These actions could, in theory, be enjoined. An injunction is a remedy, though, and not an independent cause of action, and should not be stated as a separate count in the complaint. Accordingly count XXX will be dismissed, but Plaintiffs may maintain their request for an injunction in their prayer for relief.

## IV. Conclusion

For the foregoing reasons, the motion for a more definite statement filed by Defendant EMC will be denied, the motion to dismiss filed by Defendant First Ohio will be granted, and the motion to dismiss filed by EMC will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
