IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| TIMOTHY BARRY, et al. | : | |
| | : | |
| v. | : | Civil Action No. DKC 10-3120 |
| | : | |
| EMC MORTGAGE CORPORATION | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion for summary judgment filed by JPMorgan Chase Bank, N.A. ("Chase").  (ECF No. 38).[1]  The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, this motion will be granted in part and denied in part.

I.   **Background**

A.   **Factual Background**

The following facts are either uncontroverted or considered in the light most favorable to Plaintiffs Timothy and Susan Barry.  In October 2006, Plaintiffs obtained a $481,600 loan

---

[1] After the complaint was filed, Defendant EMC Mortgage Corporation reorganized as EMC Mortgage, LLC, which assigned certain servicing rights to Chase.  It is undisputed that Chase is currently the servicer of the loan at issue in this case. Chase assumed EMC's position in the lawsuit as of the time the answer was filed, but neither party has moved for substitution or joinder; thus, pursuant to Fed.R.Civ.P. 25(c), the action is continued against EMC.  Notably, EMC and Chase are represented by the same counsel.

from Southstar Funding, LLC, to refinance the mortgage on their home in Severn, Maryland. (ECF No. 17-1).[2] The loan was secured by a deed of trust granting Southstar a security interest in the property. (ECF No. 17). Defendant EMC Mortgage Corporation ("EMC") later became the servicer of the loan.[3]

At some point, Plaintiffs discovered they were making interest-only payments on a negatively amortizing loan, and Mr. Barry contacted EMC to discuss modifying its terms. On or about January 6, 2009, Plaintiffs entered into a loan modification agreement with EMC ("modification agreement"). (ECF No. 17-2).

---

[2] In the complaint, Plaintiffs alleged that the refinancing loan was obtained from First Ohio Banc and Lending, Inc. ("First Ohio"), which was named as a defendant along with EMC Mortgage Corporation. In support of a subsequent motion to dismiss, however, EMC submitted a deed of trust and promissory note identifying Southstar as the lender. (ECF Nos. 17, 17-1). There is no dispute that these are the loan documents underlying the modification at issue. It is unclear what role, if any, First Ohio had in this process. Nevertheless, all claims against that defendant have been dismissed on limitations grounds.

It also bears mention that the case appears to have been improperly assigned to the court's southern division, as Plaintiffs reside in Anne Arundel County. *See* Local Rule 501.4.b. This error was facilitated by Plaintiffs' failure to identify their current address in the complaint or their county of residence in the civil cover sheet. Plaintiffs' omissions in this regard, combined with the vague factual allegations in the complaint, purportedly contributed to EMC's difficulty in identifying the loan documents at issue. (ECF No. 6, n. 2).

[3] The complaint recites that "First Ohio Bank eventually sold the loan to EMC Mortgage, which both owns and services the loan." (ECF No. 1 ¶ 31). The evidence reflects, however, that EMC was the servicer of the loan during the relevant time period. (ECF No. 38-4).

Under the modification agreement, Plaintiffs' monthly payments increased from $2,400 to $2,841.90, but the interest rate on the loan was significantly reduced. This "result[ed] in a fully amortizing loan payment that reduced the principal balance of the loan." (ECF No. 38-2, Plaintiffs' response to request for admission no. 2). Plaintiffs, however, "failed to timely pay the installments called for under that agreement." (*Id.* at response no. 1).

Mr. Barry again called EMC "to try to secure a modification." (ECF No. 38-2, Plaintiffs' answer to interrogatory no. 4). On or about November 17, 2009, he spoke with an unidentified representative who proposed restructuring the modified loan. During that phone call, Mr. Barry and the EMC representative "agreed to a trial period modification whereby Plaintiffs would . . . make four trial payments, and upon the completion of those four payments, Plaintiffs would receive a restructuring of their mortgage with monthly payments in line with the trial modification plan" ("oral restructure agreement"). (*Id.*). The portion of that agreement calling for four trial payments was reduced to writing, which Mr. Barry signed on December 14, 2009 ("trial modification plan"). (ECF No. 38-4). The trial modification plan, however, contained no terms proposing a modification, nor did it contemplate any future "restructuring" of Plaintiffs' mortgage. To the

contrary, it was expressly a "repayment agreement" designed to collect a "delinquent amount due" for "October 1, 2009 through December 1, 2009 mortgage payments and fees." (*Id.*).[4] The agreement reflected that Plaintiffs owed a total past due amount of $8,809.90, which they were to pay in four monthly installments of $2,415.61 from December 2009 to March 2010. (*Id.*). It does not reflect that payments of any additional amounts were due during the trial period.

Despite the fact that Plaintiffs made those payments in full and on time, they did not receive a permanent modification of their mortgage. Rather, "[i]n March 2010, [Mr.] Barry received a statement from [EMC] demanding $11,367.60." (ECF No. 38-2, at answer to interrogatory no. 6).[5] In response, he

---

[4] The trial modification plan was not expressly a Trial Period Plan ("TPP") agreement under the Home Affordable Modification Program ("HAMP"). The absence of any allegation or evidence related to a HAMP application or TPP agreement appears to be the only thing distinguishing this case from a group of complaints in multi-district litigation currently pending in the District of Massachusetts involving Chase and EMC. *See In re JPMorgan Chase Mortg. Modification Litigation*, --- F.Supp.2d --- -, 2012 WL 3059377, at *2-3 (D.Mass. July 27, 2012) (describing "Group 2" plaintiffs as those who were promised a TPP agreement, but "were sent either a Forbearance Agreement or a Repayment Agreement" and told that "upon completion of the preliminary 'plans' outlined in these Agreements, they would be notified as to whether they qualified for a mortgage modification.").

[5] The $2,841.90 monthly amount that Plaintiffs were required to pay under the modification agreement, multiplied by four months (*i.e.*, for monthly payments from December 2009 to March 2010), equates to $11,367.60.

contacted EMC and was told he had not been paying the full amount of his mortgage and that "the accumulation of the unpaid amounts had to be immediately paid back." (*Id.*). When Plaintiffs were unable to pay this amount, their mortgage fell into default.

### B.   Procedural History

Plaintiffs commenced this action on November 30, 2010, by filing a complaint setting forth thirty counts against EMC and First Ohio Banc and Lending, Inc.  In response, EMC filed a motion for more definite statement as to counts I (breach of contract) and VIII (violation of the Maryland Consumer Protection Act ("MCPA")) and for dismissal of the remaining counts.  First Ohio separately moved to dismiss all counts against it as time-barred.  By a memorandum opinion and order issued July 6, 2011, the court granted both motions to dismiss, but denied EMC's motion for more definite statement.[6]

---

[6] With respect to the breach of contract claim, the court explained that "EMC had made a strong case for requiring Plaintiffs to provide certain details that are necessary to enable EMC to respond to the complaint allegations," but "undercut its own argument . . . [by] attach[ing] copies of a deed of trust and other documentation pertinent to the refinancing." (ECF No. 22, at 8).  The court further explained that, "[b]y confirming that [the modification agreement] is an accurate copy, Plaintiffs have provided EMC with the address of the property at issue and the full names of the parties and EMC can now search its own records and public land records for any additional information it needs to formulate its answer." (*Id.* at 8-9).

With only counts I and VIII remaining, Chase – identifying itself as the "successor servicer to EMC" – answered the complaint, purporting to raise a number of affirmative defenses. Plaintiffs moved to strike the affirmative defenses, arguing that Chase had failed to comply with the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).   The court partially granted that motion, striking, *inter alia*, a statute of frauds defense asserted by Chase without prejudice to its right to move for leave to amend the answer within twenty-one days.

Chase did not move for leave to amend its answer.  Instead, it filed, within twenty-one days after the prior order, a motion for judgment on the pleadings, arguing that Plaintiffs failed to state a claim for breach of any written contract or violation of the MCPA.  (ECF No. 33).  To the extent the agreement at issue was not in writing, Chase asserted that the breach of contract claim was barred by the statute of frauds.  In opposing that motion, Plaintiffs argued that Chase's statute of frauds defense had been stricken, and that the defense was waived because Chase failed to move for leave to amend.  Plaintiffs also clarified that the modification agreement with EMC was not the contract that was allegedly breached.  Rather, they identified the oral restructure agreement as the subject of their breach of contract claim:

> This binding agreement or contract is
> referred to in paragraphs 39 to 41 of the
> [c]omplaint whereby the parties agreed to a
> monthly payment of $2400 . . . for [four]
> months, and if Plaintiffs timely made these
> [four] payments, the trial modification
> would become permanent. Plaintiffs accepted
> this offer and made [four] payments in good
> faith under this agreement as consideration
> [] under the contract. Therefore, a binding
> contract existed between Plaintiffs and
> Defendant.
>
> Defendant breached this agreement by
> demanding a payment greater than what was
> originally agreed upon.

(ECF No. 34, at 4 (internal record citations omitted)).[7]  They

also provided some clarification of the contours of their MCPA

claim:

> The [c]omplaint paints a perfectly clear
> picture of the Trial Plan Fraud Scheme that
> Defendant perpetrated upon Plaintiffs: Mr.
> and Mrs. Barry were having trouble making
> their payments of $2850.00 under the
> [modification agreement] . . . [s]o, they
> contacted Defendant in an effort to come to
> an agreement on an affordable monthly
> payment. Plaintiffs and Defendant agreed
> upon [the oral restructure agreement] where
> Plaintiffs would pay their original monthly
> payment of $2400 per month for [four]
> months, and Defendant represented to

---

[7]  Plaintiffs' opposition papers failed to distinguish
between the trial modification plan (*i.e.*, the written agreement
to make four trial period payments) and the oral restructure
agreement (*i.e.*, the prior agreement that making those payments
on time would result in a permanent restructuring of the loan).
Indeed, that distinction was not fleshed out until the motion
for summary judgment was filed. Moreover, while Plaintiffs have
repeatedly alleged that the trial modification plan involved six
monthly payments, the written document calls for four; thus,
that number has been substituted, in brackets, here.

> Plaintiffs that if they paid this amount on
> time and in full for [four] months, that
> this modification would become permanent.
> Plaintiffs fulfilled their end of this
> agreement, but Defendant did not.  Instead,
> Defendant demanded an exorbitant payment
> amount that seemingly ignored the agreed-
> upon [oral restructure agreement].
> Plaintiffs were unable to make this payment,
> and thus defaulted on their mortgage.

(*Id.* at 9 (internal record citations omitted)).

While the motion for judgment on the pleadings was still pending, Chase filed its motion for summary judgment, raising essentially the same arguments, but attaching as exhibits the trial modification plan and Plaintiffs' initial discovery responses.  (ECF No. 38).[8]  Plaintiffs opposed that motion, presenting no additional evidence (ECF No. 39), and Chase filed a reply (ECF No. 40).

## II.  Standard of Review

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may

---

[8] Because discovery has now closed and evidence has been submitted in support of a motion for summary judgment, the court declines to consider a motion addressed to the sufficiency of allegations contained in the complaint.  Accordingly, the motion for judgment on the pleadings will be denied.

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

### A. Breach of Contract

The evidence presented by Chase in support of its motion for summary judgment establishes that there are essentially three alleged agreements involved in this case: (1) the modification agreement, which Plaintiffs entered into with EMC

on January 6, 2009, providing for an increased monthly payment and a reduction of the interest rate on the mortgage (ECF No. 17-2); (2) the trial modification plan, signed by Mr. Barry on December 14, 2009, which called for Plaintiffs to pay delinquent amounts that accrued from October through December 2009 (ECF No. 38-4); and (3) the oral restructure agreement, entered between Mr. Barry and an unknown EMC representative on or about November 17, 2009, providing that if Plaintiffs performed under the trial modification plan, EMC would permanently modify the mortgage (ECF No. 38-2).   It is now clear that the breach of contract claim relates solely to the oral restructure agreement, which EMC allegedly breached when it did not restructure the mortgage after Plaintiffs complied with the terms of the trial modification plan and, instead, demanded payment of past due amounts.   As a result, Plaintiffs were assessed certain penalties, their loan fell into default, and they "lost credit opportunities" and suffered "emotional distress."   (ECF No. 38-2, at answers to interrogatories nos. 9, 17).

Chase argues that EMC is entitled to summary judgment on this claim because "the alleged oral agreement . . . is barred by Maryland's Statute of Frauds for two distinct reasons: (1) it cannot be performed fully within one year [*see* Md. Code Ann., Cts. & Jud. Proc. § 5-901(3)]; and (2) it involves an interest in real estate [*see* Md. Code Ann., Real Prop. § 5-104]."   (ECF

No. 38-1, at 7).  Plaintiffs contend, in opposition, that Chase "has waived its right to raise the Statute of Frauds as an affirmative defense" and, in any event, that the statute of frauds does not apply.  (ECF No. 39, at 3).

Initially, it must be determined whether Chase may raise the statute of frauds defense that was previously stricken from its answer.  Pursuant to Federal Rule of Civil Procedure 8(c), "a party must affirmatively state any avoidance or affirmative defense" in a responsive pleading.  Generally, the failure to do so constitutes waiver.  *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).  "Absent unfair surprise or prejudice," however, "some courts have allowed a party to raise an affirmative defense for the first time as late as trial, but only where the evidence supporting the defense is introduced without objection."  *Innovative Legal Marketing, LLC v. Market Masters-Legal*, --- F.Supp.2d ----, 2012 WL 1081180, at *3 (E.D.Va. Mar. 30, 2012) (citing 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice and Procedure* § 1238 (3d ed. 2011)).  In fact, even where the defendant does not raise an affirmative defense, "a *sua sponte* grant of summary judgment on that ground may still be appropriate 'so long as the losing party was on notice that she had to come forward with all of her evidence.'"  *Innovative*

*Legal Marketing*, 2012 WL 1081180, at *3 (quoting *Rutecki v. CSX Hotels, Inc.*, 290 Fed.Appx. 537, 542 (4th Cir. 2008)); *see also Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) ("'district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.'" (quoting *Celotex*, 477 U.S. at 326)).

Here, Plaintiffs were on notice of their obligation to come forward with evidence opposing Chase's motion for summary judgment, *see* Fed.R.Civ.P. 56(c), and have presented none. Moreover, they do not claim unfair surprise or prejudice, nor could they under the facts of this case, as Chase filed a motion asserting a statute of frauds defense within the same time period allotted for it to move for amendment of its answer. Indeed, it was not until Plaintiffs propounded their discovery responses, well after the motion for judgment on the pleadings was filed (ECF No. 38-2, at 14), that Chase could have known with certainty that the breach of contract claim related entirely to an oral agreement.

Notably, one of the arguments presented by Plaintiffs in opposition to the motion for summary judgment is that "the terms of the oral agreement . . . remain in dispute." (ECF No. 39, 1). Although the record reflects otherwise – the only evidence regarding the terms of the purported oral agreement is set forth

12

by Plaintiffs in their discovery responses (ECF Nos. 38-2, 38-3)
– this is precisely the kind of problem that the statute of
frauds is meant to avoid.   Considering that the parties have had
two rounds of briefing on the issue, and that due to certain
procedural irregularities in the case it has only recently been
revealed that the breach of contract claim relates entirely to
an oral agreement, Chase may raise the defense on summary
judgment.  *See Brinkley*, 180 F.3d at 613 (finding no waiver
where the plaintiff "had fair warning that the [affirmative]
defense was likely to arise . . . [and] had ample opportunity to
respond to [the defendant's] summary judgment motion in which it
initially raised [it]"); *Cornell v. Council of Unit Owners
Hawaiian Village Condominiums, Inc.*, 983 F.Supp. 640, 643 (D.Md.
1997) (finding no waiver where the plaintiff "filed a
comprehensive response to the pending summary judgment motion,
demonstrating his thorough understanding of the principles of
law and fact").

The question of whether the oral restructure agreement
falls within the scope of the Maryland statute of frauds is more
clear-cut.   Pursuant to Md. Code Ann., Real Prop. ("RP") § 5-
104, "[n]o action may be brought on any contract for the sale or
disposition of land or of any interest in or concerning land
unless the contract on which the action is brought, or some
memorandum or note of it, is in writing and signed by the party

to be charged or some other person lawfully authorized by him."
The evidence reflects that the oral restructure agreement
proposed permanent modification of an existing mortgage.
Because a mortgage is a contract concerning land, it follows
that the oral restructure agreement falls within the statute of
frauds. *See Calomiris v. Woods*, 353 Md. 425, 445 (1999)
(holding that a "mortgage contract . . . falls within the
Statute of Frauds . . . and strict enforcement of the Statute of
Frauds should apply to prevent the admission of parol evidence
inconsistent with the terms of the contract."); *Campbell v.
Indymac Bank, FSB*, Civ. No. CCB-09-3182, 2010 WL 419387, at *2
(D.Md. Jan. 29, 2010) (finding, under Maryland law, that an
"oral contract" which "modified [the plaintiff's] home loan . .
. concerned an interest in real property" and could not be
enforced under the statute of frauds); 10 Williston on Contracts
§ 29:46 (Thomas Reuters, 4th ed. 2012) ("It is a well-recognized
principle that where a Statute requires a contract must be in
writing, or evidenced by a written memorandum, the terms of that
contract cannot be varied by subsequent oral agreements.")
(internal marks omitted).

The statute of frauds set forth at RP § 5-104 required that
the oral restructure agreement be in writing.  Because it was

not, it is unenforceable, and EMC is entitled to summary judgment on the breach of contract claim.[9]

### B.   Maryland Consumer Protection Act

The MCPA, codified at Md. Code Ann., Comm. Law ("CL") §§ 13-101, *et seq.*, "was intended to provide minimum standards for the protection of consumers in [Maryland]." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 140 (2007).  The Maryland legislature passed the Act "in response to mounting concern over the increase of deceptive practices" and because it felt that "existing federal and State laws [were] inadequate, poorly coordinated and not widely known or adequately enforced." *Morris v. Osmose Wood Preserving*, 340 Md. 519, 536-37 (1995). The Act is intended to be liberally construed in order to achieve its consumer protection objectives.  *See State v. Cottman Transmissions Sys., Inc.*, 86 Md.App. 714, 743 (1991).

Under the MCPA, "a person may not engage in any unfair or deceptive trade practice" related to, *inter alia*, "[t]he extension of consumer credit." CL § 13-303.  Section 13-301(1)

---

[9] Chase also argues that the oral restructure agreement is unenforceable under Md. Code Ann., Cts. & Jud. Proc. § 5-901(3), because it cannot be performed within one year.  The one-year provision only applies, however, where the parties either "expressly and specifically" agree that the oral contract will not be performed within one year, or "when it is impossible by the terms of the contract for it to be performed fully within one year." *Griffith v. One Inv. Plaza Assos.*, 62 Md.App. 1, 5 (1985).  The record does not reflect that either of those situations is presented here.

prohibits any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers."

In moving for summary judgment on this count, Chase argues: (1) that EMC did not engage in unfair or deceptive trade practices; (2) that Plaintiffs are not within the class of persons the Act was designed to protect; and (3) that Plaintiffs have not sustained a specific injury or loss. The only evidence provided, however – *i.e.*, Plaintiffs' initial discovery responses, which were submitted by Chase in support of its motion – supports that EMC misrepresented to Mr. Barry, on or about November 17, 2009, that if he made full and timely payments under the trial modification plan, "Plaintiffs would receive a restructuring of their mortgage with monthly payments in line with the trial modification plan." (ECF No. 38-2, at answer to interrogatory no. 4). There is evidence that Plaintiffs fully performed and that no such modification occurred. While it is true, as Chase observes, that the trial modification plan contains no terms suggesting that it was intended to restructure the mortgage, it is also true that it contains no terms directing Plaintiffs to continue making their regular monthly payments in addition to the arrearages over the four-month term. Yet, those amounts are precisely what EMC

demanded at the end of the four months, and it is at least plausible, based on the sparse record presented, that EMC made oral misrepresentations that induced Plaintiffs to believe they were only required to make the trial period payments knowing that Plaintiffs would likely default when later presented with a demand for four months of regular payments.

Chase appears to concede that there is sufficient evidence that a misrepresentation was made, but argues that Plaintiffs cannot show that they were "induced to enter into the December 8, 2009[,] Agreement based on Chase's alleged oral representation." (ECF No. 40, at 7). Chase relies on *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F.Supp.2d 505, 532 (D.Md. 2011), for the proposition that "[c]onsumers must prove that they relied on the misrepresentation," and that "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." (*Id.* (quoting *Jill P. Mitchell Living Trust*, 822 F.Supp.2d at 532)). Judge Williams made clear in that case, however, that the question of "[w]hether a misrepresentation substantially induces a consumer's choice is ordinarily a question of fact for the trier of fact." *Id.* (citing *Nails v. S & R, Inc.*, 334 Md. 398, 416 (1994)). Moreover, "[t]he quantum of evidence on which a fact-finder could reasonably conclude that an alleged misrepresentation substantially induces a consumer's choice is

17

relatively low." *Id.* Here, there is a sufficient basis upon which a fact finder could determine that Plaintiffs relied on EMC's misrepresentation.[10]

Chase further argues that Plaintiffs do not fall within the class of persons protected under the MCPA because "the record does not contain any facts supporting . . . that Chase's alleged wrongful acts occurred during the origination of Plaintiffs' loan (i.e., the extension of credit)." (ECF No. 38-1, at 12). It cites no case law suggesting that the "extension of credit" referred to by Act is limited to the original loan, and at least one court has found that the MCPA may apply in a similar context. *See Allen v. CitiMortgage, Inc.*, Civ. No. CCB-102740, 2011 WL 3425665, at *9 (D.Md. Aug. 4, 2011) (denying motion to dismiss MCPA claims related to alleged misrepresentations regarding modification of an existing loan). In its reply

_____

[10] Chase makes much of a statement made by Plaintiffs in their discovery responses that, after the November 17, 2009, oral restructure agreement, "Plaintiff Tim Barry signed the agreement of December 8, 2009." (ECF No. 38-2, at answer to interrogatory no. 4). It appears to read this as an admission that the terms of the oral restructure agreement were reduced to writing in the trial modification plan, and then cites the fact that the trial modification plan contains none of the alleged provisions of the oral agreement as evidence that no misrepresentation was made. In considering a motion for summary judgment, however, the court must look at the evidence in the light most favorable to the non-moving party. *See Scott*, 550 U.S. at 378; *Emmett*, 532 F.3d at 297. The clear thrust of Plaintiffs' discovery responses is that oral restructure agreement called for EMC to modify the loan permanently after performance under the trial modification plan.

papers, Chase contends that *Allen* and other cases cited by Plaintiffs are inapposite because they do not "speak[] to the issue in contention, which . . . is whether the December 8, 2009 Agreement constitutes 'an extension of consumer credit' under Section 13-303 of the Act." (ECF No. 40, at 9). The "issue in contention," however, is not whether the trial modification plan constitutes an extension of credit; rather, it is whether the oral restructure agreement, which purported to modify the terms of Plaintiffs' mortgage, was such an extension. While the MCPA does not expressly define "extension of credit," the term is defined under the Maryland Credit Services Businesses Act ("CSBA") as "the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes." CL § 14-1901(f); *see also* CL § 14-1914(a) (any violation of the CSBA "is an unfair or deceptive trade practice under [the MCPA]"); *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 178 (2012). The oral misrepresentations allegedly made by EMC clearly relate to an extension of credit under this definition.

Finally, Chase urges that summary judgment in favor of EMC is appropriate because Plaintiffs have not sustained any specific injury or loss. Because the MCPA provides for a private right of action only where an individual seeks "to recover for injury or loss sustained by him as the result of a

practice prohibited by this title," CL § 13-408, the Court of Appeals of Maryland has "clarified that an individual may only bring a claim . . . if she can 'establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice.'" *Willis v. Countrywide Home Loans Servicing, L.P.*, Civ. No. CCB-09-1455, 2009 WL 5206475, at *6 (D.Md. Dec. 23, 2009) (quoting *Lloyd*, 397 Md. at 148); *see also Citaramanis v. Hallowell*, 328 Md. 142, 152 (1992). The record reflects that Plaintiffs were assessed penalties in the form of Chase's demand for "$11,367.60 and all charges flowing from that demand," that Plaintiffs "lost credit opportunities as a result of Defendant's violation of the [MCPA]," and that they suffered "emotional distress." (ECF No. 38-2, at answers to interrogatories nos. 8, 9, 17). *See Allen*, 2011 WL 3425665, at *10 (finding the plaintiff's allegations of "damage to [her] credit score [and] emotional damages" sufficient to allege "an actual injury or loss as a result of a prohibited practice under the MCPA"). Chase points to no case law supporting that this evidence does not constitute an actual injury or loss under the MCPA, nor does it present any evidence in rebuttal.

In sum, Chase has not demonstrated that EMC is entitled to judgment as a matter of law on the MCPA claim. Accordingly, its motion for summary judgment as to this claim will be denied.

## IV.  Conclusion

For the foregoing reasons, Chase's motion for summary judgment will be granted in part and denied in part.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge